**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Larry K. Begay, Administrator of the Estate of Charles Begay,<br><br>Plaintiff,<br><br>v.<br><br>Office of Navajo and Hopi Indian Relocation, an administrative agency of the United States,<br><br>Defendant. | No. CV-16-08229-PCT-JAT<br><br>**ORDER** |

Pending before the Court are Plaintiff's Motion for Summary Judgment (Doc. 35) and Defendants' Cross-Motion for Summary Judgment (Doc. 37). The Court now rules on the motions.[1]

**I. BACKGROUND**

On March 4, 2017, Plaintiff filed the pending Motion for Summary Judgment (Doc. 35). Defendant then filed a Response and Cross-Motion for Summary Judgment on April 3, 2017 (Doc. 37). Plaintiff filed a Response to Defendant's Cross-Motion and Reply on May 3, 2017 (Doc. 39) and Defendant filed a Reply on May 16, 2017 (Doc. 41).[2] Here, Plaintiff alleges that the Independent Hearing Officer ("IHO") erred in

---

[1] This action was initiated by Charley Begay, who is now deceased. (*See* Doc. 44). As per the Court's Order to Substitute Plaintiff (Doc. 48), Larry K. Begay, as Administrator of the Estate of Charley Begay, is now Plaintiff in this action. However, this Order will still refer to the deceased as "Plaintiff" to avoid confusion.

[2] Plaintiff later filed revised moving papers on May 17, 2017 to comply with District of Arizona Local Rule Civil 7.1(b)(1), but "no substantive changes were made."

denying his claim for relocation assistant benefits provided by the Navajo-Hopi Settlement Act, Pub. L. 93-531, § 12, December 22, 1974, 88 Stat. 1716 (the "Settlement Act").

## A. The Settlement Act

The Settlement Act attempted to resolve an inter-tribal conflict between the Hopi and Navajo Indians by authorizing a court-ordered partition of land that was then-jointly held by the two tribes. *See Bedoni v. Navajo-Hopi Indian Relocation Comm'n*, 878 F.2d 1119, 1121-22 (9th Cir. 1989). The Settlement Act further created the predecessor to the Office of Navajo and Hopi Indian Relocation (ONHIR) to provide services and benefits to relocate individuals who resided on land allocated to the other tribe at that time. *See Laughter v. Office of Navajo & Hopi Indian Relocation*, CV-16-08196-PCT-DLR, 2017 WL 2806841, at *1 (D. Ariz. June 29, 2017) (citing *Id.*). To be eligible for benefits under the Settlement Act, a Navajo applicant must prove that he was a legal resident of the Hopi Partitioned Land ("HPL") as of December 22, 1974 and that he was the head of household at that time. *See id*. The applicant bears the burden of proving legal residence and head of household status. *See id*. (citing 25 C.F.R. § 700.147 (1986)).[3]

## B. Facts and Procedural History

Plaintiff is an enrolled member of the Navajo Nation who applied for relocation benefits under the Settlement Act on April 28, 2005. (Plaintiff's Statement of Facts in Support of Motion for Summary Judgment ("PSOF"), Doc. 36 at ¶¶ 1, 3; Defendant's Controverting Statement of Facts ("DCSOF"), Doc. 38 at at ¶¶ 1, 3; Certified Administrative Record ("CAR") 23). The application was denied on October 11, 2005, in part, because Plaintiff was found not to be a legal resident of the HPL as of December 22, 1974. (PSOF at ¶¶ 4; DCSOF at ¶¶ 4; CAR 27). Plaintiff appealed, and a hearing before

---

(Doc. 42).

[3] Here, the parties stipulated that Plaintiff obtained head of household status prior to December 22, 1974, so the only disputed issue before the IHO was whether Plaintiff qualified as a legal resident of HPL as of the relevant date. (Doc. 35 at 5; Doc. 37 at 3; AR at 35).

- 2 -

an IHO was held on February 22, 2008. (PSOF at ¶¶ 7; DCSOF at ¶¶ 7; CAR 35). On April 28, 2008, the IHO issued his decision denying Plaintiff's appeal and affirming Defendant's denial of benefits. (PSOF at ¶¶ 9; DCSOF at ¶¶ 9; CAR 37). Defendant, however, did not take final agency action on Plaintiff's application at that time. (PSOF at ¶¶ 13; DCSOF at ¶¶ 13; CAR 42).

On January 6, 2010, Defendant notified the IHO that Plaintiff's case was being remanded for further proceedings due to Defendant's revision of its eligibility standards. (PSOF at ¶¶ 20; DCSOF at ¶¶ 20; CAR 47). Plaintiff conducted a field investigation of Plaintiff's land on June 24, 2015, the results of which Plaintiff later presented as evidence at his remand hearing on April 1, 2016. (PSOF at ¶¶ 22; DCSOF at ¶¶ 22; CAR 50, 53). Plaintiff, his sons, Larry and Nelson Begay, and his daughter-in-law, Raelene Begay testified at the remand hearing. (PSOF at ¶¶ 25; DCSOF at ¶¶ 25; CAR 53). There, Plaintiff argued that he maintained one homesite—Whitewater—located on Navajo Partitioned Land ("NPL") and another—Old Branch—located on HPL as of December 22, 1974. (PSOF at ¶¶ 62; DCSOF at ¶¶ 62; CAR 53, 56). Plaintiff and his witnesses testified that Plaintiff planted a cornfield at Old Branch and resided there to some extent in the spring planting season, thus allegedly establishing the land as part of Plaintiff's residence as a "traditional use area" on HPL. (*Id.*). In opposition to Plaintiff's argument, Defendant presented undisputed evidence that Plaintiff was enumerated by the Bureau of Indian Affairs ("BIA") Roster only on the NPL at Whitewater and was not enumerated on the HPL at Old Branch. (PSOF at ¶¶ 30; DCSOF at ¶¶ 30; CAR 53).[4] Further, none of Plaintiff's claimed improvements to the land or his purported residence at Old Branch were documented in the BIA's enumerated improvements. (*Id.*).

On May 20, 2016, the IHO issued his decision again denying Plaintiff's appeal on remand. (PSOF at ¶¶ 31; DCSOF at ¶¶ 31; CAR 56). In support of this conclusion, the

---

[4] The BIA performed an "Enumeration" or census of the people and improvements to land located within the former joint use area that became HPL and NPL in 1974 and 1975. (PSOF at ¶¶ 67, 71; DCSOF at ¶¶ 67, 71). The results of that enumeration are compiled in the BIA Roster. (*Id.*).

IHO relied—at least in part—on the BIA enumeration and reasoned that BIA enumerators would have had to be "blind to their surroundings" to fail to identify Plaintiff's purported residence at Old Branch if there was one in use at the time of the enumeration. (PSOF at ¶¶ 31; DCSOF at ¶¶ 31; CAR 56). The IHO found that Plaintiff's testimony, which contradicted the BIA enumeration, had "limited" credibility because he failed to recall dates of certain events. (PSOF at ¶¶ 65; DCSOF at ¶¶ 65; CAR 56). The IHO also found that Larry and Nelson Begay's testimony "may be credible" and that Raelene Begay's testimony "lacked" credibility because she was not in the area in 1974. (*Id.*). Defendant issued its Notice of Final Agency Action on June 13, 2016, affirming the IHO's decision that Plaintiff was ineligible for benefits. (PSOF at ¶¶ 32; DCSOF at ¶¶ 32; CAR 57). Plaintiff then filed his Complaint on October 6, 2016 seeking judicial review of Defendant's administrative decision that he is not entitled to relocation benefits under the Settlement Act. (Doc. 1).

## II. STANDARD OF REVIEW

The Administrative Procedure Act ("APA") governs judicial review of agency decisions under the Settlement Act. *Hopi Tribe v. Navajo Tribe*, 46 F.3d 908, 914 (9th Cir. 1995). The APA provides that the Court may set aside an administrative agency's decision only if that decision was "arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence." *Bedoni v. Navajo-Hopi Relocation Comm'n*, 878 F.2d 1119, 1122 (9th Cir. 1989) (citing 5 U.S.C. § 706(2)(A), (E) (1982); *Walker v. NHIRC*, 728 F.2d 1276, 1278 (9th Cir. 1984)). "Substantial evidence is more than a mere scintilla, but less than a preponderance." *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995). Under this standard, the Court applies a narrow and highly deferential standard of review:

> To make this finding the [C]ourt must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The [C]ourt is not empowered to substitute its judgment for that of the agency.

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977) (citations omitted).

Unlike summary judgment in an original district court proceeding, the function of the Court in a review of an administrative proceeding "is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Occidental Engineering Co. v. I.N.S.*, 753 F.2d 766, 769 (9th Cir. 1985). "Where evidence is susceptible of more than one rational interpretation, it is the [IHO's] conclusion which must be upheld; and in reaching his findings, the [IHO] is entitled to draw inferences logically flowing from the evidence." *Gallant v. Heckler*, 753 F.2d 1450, 1453 (1984) (citations omitted). Ultimately, the Court must affirm if the agency "considered the relevant factors and articulated a rational connection between the facts found and the choices made." *Ranchers Cattleman Action Legal Fund United Stockgrowers of America v. U.S. Dep't of Agr.*, 499 F.3d 1108, 1115 (9th Cir. 2007) (quoting *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1206 (9th Cir. 2004)).

## III. CROSS-MOTIONS FOR SUMMARY JUDGMENT

Plaintiff contends that the IHO's conclusion that he was not a legal resident of the HPL as of December 22, 1974 is not supported by substantial evidence, and that the decision denying relocation benefits otherwise is arbitrary and capricious and contrary to law. (Doc. 35 at 4-15). Defendant argues that the decision is reasonable and supported by substantial evidence, that the IHO articulated specific and cogent reasons for his credibility findings, and that he properly followed applicable law and precedent. (Doc. 37 at 9-15).

### A. Plaintiff is Entitled to Judicial Review

Defendant alleged in its Answer (Doc. 32) that Plaintiff failed to exhaust his administrative remedies prior to seeking judicial review. (Doc. 32 at 6). The Court, however, finds that Defendant's Notice of Final Agency Action issued on June 13, 2016 is a final agency action subject to judicial review under the APA. 5 U.S.C. § 706 (1966); *see, e.g.*, *Darby v. Cisneros*, 509 U.S. 137 (1993) (holding that an appeal to superior

1  agency authority is not a prerequisite to judicial review unless "expressly required by
2  statute"). Here, the operative regulation provides that Plaintiff "*may* submit briefs or
3  other written argument" to Defendant following the receipt of the IHO's decision, but the
4  regulation expressly deems that process optional. 25 C.F.R. § 700.317 (emphasis added).
5  Therefore, Plaintiff's decision not to file the optional briefs with Defendant as a means of
6  challenging the IHO's decision is not a required remedy that Plaintiff must exhaust prior
7  to seeking judicial review from this Court. (*See* Doc. 35 at 4-5). The Court will take up
8  the IHO's alleged errors on appeal in the order argued by Plaintiff.

### B. Plaintiff's Alleged Residency at and Use of Old Branch

Plaintiff argues that the IHO's determination that "Plaintiff's annual residency at Old Branch and his annual planting and harvesting at Old Branch did not fit" Defendant's regulations for establishing legal residence is unsupported by substantial evidence and contrary to law. (Doc. 35 at 6). As described in the comments to the applicable regulation, the term "residence" in the final rule "requires an examination of a person's intent to reside combined with manifestations of that intent." Commission Operations and Relocation Procedures; Eligibility, 49 FR 22277-01 (May 29, 1984). This element of subjective intent allows that "[a]n individual who was, on December 22, 1974, away from the land partitioned to the Tribe of which he/she is not a member may still be able to prove legal residence." *Id*.

Here, Plaintiff concedes that he established a homesite and another cornfield at Whitewater and resided there in 1974, but claims that he treated Old Branch as a "traditional customary use area even after establishing homesites at Whitewater on NPL." (Doc. 35 at 5-6; PSOF at ¶¶ 41). Plaintiff further argues that he continued to reside in structures at Old Branch "during planting and harvesting season for up to 20 days at a time" through the establishment of the HPL/NPL partition line. (Doc. 35 at 6). The IHO, however, in acknowledging Plaintiff's testimony regarding annual planting activities, found that there was no residence or homesite structure at Old Branch in existence at the relevant time period. (Doc. 37 at 10 (citing CAR 56)). This finding was supported by

evidence in the form of the BIA enumeration, which did not identify a single claimed structure at Old Branch. (*Id*.). The IHO went so far as to determine that the BIA enumerators would have had to be "blind to their surroundings" to fail to identify Plaintiff's purported residence at Old Branch if there was one in use at the time of the enumeration. (PSOF at ¶¶ 31; DCSOF at ¶¶ 31; CAR 56). The factual finding that there was no residence in existence at Old Branch during the relevant time period supports the IHO's conclusion that Plaintiff could not have been a resident of Old Branch on HPL at that time.

Rather, the IHO concluded that Plaintiff discarded Old Branch as a residence prior to May, 1974 and relocated to a discrete successor residence at Whitewater—as observed in the BIA enumeration—from that time forward. (Doc. 37 at 10 (citing CAR 56)). Plaintiff argued that his simultaneous use of three cornfields—two at Whitewater and one at Old Branch—throughout 1974 and until the partition fence was later erected established Old Branch as a part of traditional use area constituting a residence. (Doc. 35 at 6). The IHO, however, determined that simultaneous use of all three cornfields undermined Plaintiff's testimony that he resided exclusively at Old Branch for periods of the growing season. (Doc. 37 at 10 (citing CAR 56)). The IHO's finding that Plaintiff's testimony on this matter was "contradictory" provided further reason to conclude that Plaintiff moved to Whitewater and did not intend to continue residing at Old Branch prior to the relevant date. (*Id*.).[5] Finally, the IHO determined that even if Plaintiff was truthful in that he enjoyed free movement between the NPL and HPL to utilize a cornfield at Old Branch, that use is still insufficient to establish residency. (Doc. 37 at 10 (citing CAR 56)).

For the reasons stated above, the IHO based his findings on at least "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Laughter*, 2017 WL 2806841, at *3 (quoting *Akee v. ONHIR*, 907 F. Supp. 315, 318 (D. Ariz. 1995)). Accordingly, the Court finds that the IHO's determination that Plaintiff

---

[5] *See infra* Part III(E) for discussion of the IHO's credibility findings.

lacked a manifest intent to reside at Old Branch is supported by substantial evidence.

### C. Traditional, Customary Use Areas

Next, Plaintiff argues that the IHO disregarded precedent recognizing traditional, customary use areas without explanation. (Doc. 35 at 7). "An agency's decision is arbitrary and capricious if the agency fails to follow its own precedent or fails to give a sufficient explanation for failing to do so." *Andrzejewski v. F.A.A.*, 563 F.3d 796, 799 (9th Cir. 2009) (citations omitted). Previously, Defendant determined that the division of a traditional, customary use area was an "adverse relocation outcome, even if only part of the customary use area was awarded to the Tribe of which he/she is not a member, so long as there is evidence of continuous use of the *entire* area as of the date of the Act." (*In re Minnie Woodie*, CAR 55, Ex. B-1 at 6 (emphasis in original)). The fact that an individual seeking relocations benefits was enumerated on NPL alone does not preclude them from obtaining benefits if an IHO independently determines that the individual held a customary use property that spanned both sides of the partition line. *Id*. The concept of maintaining a "traditional use area" is not expressly codified in federal regulations regarding residency, but Defendant concedes that it has historically recognized this as a basis for residency. (Doc. 37 at 11).

Defendant previously determined through an IHO that an individual maintained a traditional use area, thus establishing residency, on property that spanned the partition line, "by dedicating a portion of each year to each homesite, depending on the season of the year." (*In re Harry Isaac*, CAR 55, Ex. B-2 at 3-4). There, the IHO explained that Defendant must recognize legal residence at a traditional use area that "had been maintained for an extended period of time" and "where the pattern of residence by the applicant in such a traditional use area was *continuous*." *Id*. at 4 (emphasis added). More recently, the IHO explained that both he and "[Defendant] have long recognized that proof of the existence of a traditional use area and its *continual, active and substantial use after partition* have been accepted to show legal residence." (*In re Cindy Lake*, Doc. 37-1 at 8 (emphasis in original)). There, the IHO reasoned that an applicant must

"demonstrate by clear evidence that the entire traditional use area was used *full time* after partition and that the applicant had no residence other than in the recognized traditional use area" in order for the IHO to conclude that the applicant's legal residence consisted of land spanning across the partition line. *Id*. at 7-8 (emphasis in original). Importantly, the IHO found that both camps must have a homesite structure in order to establish "dual residency." *Id*.[6]

Here, the IHO determined that Plaintiff's seasonal planting of the Old Branch cornfield was insufficient to establish a traditional use area and, therefore, residency on HPL. (*See* Doc. 37 at 12; *see also* CAR 56). The IHO determined that Plaintiff's planting activities did not rise to the level of "continual, active and substantial use" required by precedent to establish a traditional use area. (*See In re Cindy Lake*, Doc. 37-1 at 8). Furthermore, the IHO's factual finding that there was no homesite or other structure at Old Branch supported his conclusion that Plaintiff moved to Whitewater and failed to maintain a residence at Old Branch as of the date of the partition. (*See* Doc. 37 at 12; *see also* CAR 56). The standard used by the IHO requiring that Plaintiff maintain a homesite on HPL to establish a traditional use area is consistent with agency precedent and, therefore, not arbitrary or capricious.

### D. BIA Enumeration

Next, Plaintiff argues that the IHO disregarded Defendant's policies and his own past decisions by relying, in part, on the BIA enumeration as evidence that there was no residence structure in existence at Old Branch. (Doc. 35 at 11). While Defendant previously recognized "several factors which limited the usefulness of the Joint Use Area Roster," Plaintiff cites no precedent asserting that the IHO should disregard the BIA enumeration as evidence in its entirety. (Doc. 35 at 11). Rather, precedent does establish that the BIA enumeration alone cannot establish residence, but it may be used as *prima facie* evidence of residency that Plaintiff then has the burden of disproving. (Doc. 35-6 at

---

[6] This emphasis on the presence of a homesite structure is consistent with the "house-for-house" scheme established by Congress in providing for relocation benefits. *See* 25 U.S.C. § 640d-14(a).

- 9 -

4-5).

Here, the IHO relied, in part, on the BIA enumeration to establish that Plaintiff did not have a residence at Old Branch and previously relocated to a discrete successor residence at Whitewater—where he was enumerated. (CAR 56). The IHO further relied on witness testimony and adverse credibility findings to determine that Plaintiff failed to overcome the *prima facie* evidence establishing his exclusive residency at Whitewater. (CAR 56). The IHO did not base his findings exclusively on the BIA enumeration, but permissively took the BIA enumeration into account as evidence. In weighing the totality of the circumstances regarding Plaintiff's residency in this case, the IHO explained that "each appeal must rest on its own merits," which is consistent with agency precedent and, therefore, not arbitrary or capricious.

### E. Credibility Findings

Furthermore, Plaintiff argues that the IHO's credibility findings for plaintiff and his witnesses were not supported by substantial evidence. (*See* Doc. 35 at 13). "When the decision of an ALJ rests on a negative credibility evaluation, the ALJ must make findings on the record and must support those findings by pointing to substantial evidence on the record." *Cegerra v. Secretary of Health & Human Services*, 933 F.2d 735, 738 (9th Cir. 1991) (citation omitted). The Ninth Circuit further explained that "if an ALJ has grounds for disbelieving material testimony, it is both reasonable and desirable to require the ALJ to articulate those grounds in the original decision." *Id*. at 740 (citing *Varney v. Secretary of HHS*, 859 F.2d 1396 (9th Cir. 1988)). Nevertheless, an agency's "credibility findings are granted substantial deference by reviewing courts." *De Valle v. I.N.S.*, 901 F.2d 787, 792 (9th Cir. 1990) (citations omitted). The Ninth Circuit recognized that the IHO alone is "in a position to observe [a witness]'s tone and demeanor, to explore inconsistencies in testimony, and to apply workable and consistent standards in the evaluation of testimonial evidence. He is . . . uniquely qualified to decide whether an [witness]'s testimony has about it the ring of truth." *Sarvia-Quintanilla v. U.S. I.N.S.*, 767 F.2d 1387, 1395 (9th Cir. 1985).

Here, the IHO found that Plaintiff's testimony had "limited" credibility, Larry and Nelson Begay's respective testimony "may be credible," and Raelene Begay's testimony "lacked" credibility. (PSOF at ¶¶ 65; DCSOF at ¶¶ 65; CAR 56). Plaintiff contends that the IHO "offered no rationale for why he found Plaintiff and his witnesses to be less than fully credible." (Doc. 35 at 14). The record, however, demonstrates that the IHO offered specific and cogent reasons supporting his credibility findings as to each witness. These findings are entitled to substantial deference by the Court. *See De Valle*, 901 F.2d at 792.

The IHO found that Plaintiff's testimony had limited credibility because "[Plaintiff] was unable to recall dates of events" regarding his purported living arrangements and use of Old Branch around the time of the partition. (CAR 56 at 3). Plaintiff himself acknowledged the limits of his testimony and lack of memory due to his advanced aged during the heading. (*See* CAR 53 at 6-7, 9-11). The IHO found that Plaintiff's sons "may be credible" because they were both teenagers in 1974 and failed to remember relevant facts from that time period. (*See* CAR 53 at 23-43). The IHO found that Raelene Begay's testimony lacked credibility because she did not come to live at Whitewater until 1977 and was not in the area in 1974. (CAR 56 at 4). Accordingly, the Court finds that the IHO did articulate specific, cogent reasons for his credibility findings, which were, therefore, supported by substantial evidence.

### F. Contrary to Law

Finally, Plaintiff argues that Defendant's denial of his application for relocation benefits "frustrate[s] the purpose and policy of the Navajo-Hopi Settlement Act and implementing regulation, and is thus contrary to law." (Doc. 35 at 14). The Settlement Act sought "to take cognizance of the hardships that the relocates are subject to and develop procedures [accordingly]." S. Rep. No. 1158, at 4 (1978). Moreover, supporting regulations are in place to "insure that persons displaced as a result of the Act are treated fairly, consistently, and equitably so that these persons will not suffer the disproportionate adverse, social, economic, cultural and other impacts of relocation." 25 C.F.R. §700.1. The purpose of the Settlement Act, however, does not require that each

applicant be granted relocation benefits without satisfying the Act's criteria.

"[T]he mere denial of relocation benefits, where appropriate, is neither contrary to law nor inconsistent with the purposes of the Settlement Act." *Laughter*, 2017 WL 2806841, at *5. The Court concludes that Defendant's decision in this case was not contrary to law and otherwise "does not violate the federal government's trust obligation to Native Americans because the decision was made in good faith, it was based on substantial evidence, and it was neither arbitrary nor patently inconsistent with other ONHIR decisions." *Id.* (quoting *Akee*, 907 F. Supp. at 320).

## IV. CONCLUSION

For the reasons stated above, Defendant ONHIR's decision to deny relocation benefits was not arbitrary, capricious, or an abuse of discretion. It was in accordance with law and supported by substantial evidence. Therefore, Defendant is entitled to summary judgment.

Accordingly,

**IT IS ORDERED** Plaintiff Begay's Motion for Summary Judgment (Doc. 35) is **DENIED**.

**IT IS FURTHER ORDERED** Defendant ONHIR's Cross-Motion for Summary Judgment (Doc. 37) is **GRANTED**. Defendant's administrative decision denying Plaintiff's application for relocation benefits is, therefore, **AFFIRMED**. The Clerk of Court shall enter judgment accordingly.

Dated this 22nd day of January, 2018.

James A. Teilborg
Senior United States District Judge